UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLISON PETTINATO,

        Plaintiff,

v.

        Case No.: 16-cv-14419
        Honorable Gershwin A. Drain

PROFESSIONAL PARENT CARE, a
Michigan Corporation, *et al.*,

        Defendants.
_____/

## ORDER GRANTING DEFENDANT SANFORD LINDEN'S MOTION FOR PARTIAL DISMISSAL[#10] AND CANCELING THE HEARING AND SCHEDULING CONFERENCE SCHEDULED FOR JULY 17, 2017

**I.    INTRODUCTION**

On February 2, 2017, Allison Pettinato ("Plaintiff") filed an amended complaint for damages against Professional Parent Care ("PPC"), a Michigan company, Sanford Linden ("Linden"), and Morris Huppert ("Huppert"). Plaintiff asserts that all three Defendants violated Title VII of the Civil Rights Act of 1964. Presently before the Court is Linden's Motion for Partial Dismissal. This matter is fully briefed and a hearing is scheduled for July 17, 2017. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will cancel the hearing and

resolve the instant motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court will grant Linden's Motion for Partial Dismissal.

**II.    FACTUAL BACKGROUND**

On October 14, 2015, Plaintiff began her employment as a Direct Service Provider ("caregiver,") for Defendant PPC, a home health care provider. Pl.'s Compl. Pg. ID 41. A caregiver's duty is to provide personal care to PPC's clients and assist them through daily living activities. *Id.* at Pg ID 40. Defendant Linden is the owner/CEO of PPC.

On November 9, 2015, Linden assigned Plaintiff to the home of Defendant Huppert, an elderly man. *Id.* at Pg ID 41. Neither Linden nor anyone at PPC informed Plaintiff that Huppert has a history of sexual harassment towards his caregiver. *Id.* at Pg ID 56. Almost immediately upon the start of her service at the Huppert home, Huppert repeatedly kissed and hugged the Plaintiff. *Id.* at Pg ID 41-42. Huppert also grabbed the Plaintiff's breasts and buttocks. *Id.* Huppert continued these actions despite clear objections by the Plaintiff. *Id.* at Pg ID 43. On November 19, 2015, Plaintiff reported Huppert's conduct to her PPC supervisor. *Id.* The supervisor relayed the report to Linden. *Id.*

However, Plaintiff's assignment at Huppert's home was not changed. *Id.* at Pg ID 44. During her shift at Huppert's home on November 28, 2015, Huppert informed the Plaintiff that he has a personal relationship with Linden and that he

could have her fired if he wanted. *Id.* On or about December 1, 2015, Huppert offered the Plaintiff money for sexual favors. *Id.* at Pg ID 46. He then told her that he made similar arrangements with his previous caregivers. *Id.* The following day, Plaintiff told PPC's manager that she would not be returning to Huppert's home and that she wanted to meet with Linden to discuss the inappropriate conduct she had endured working for PPC in the Huppert home. *Id.* at Pg ID 48.

Linden thereafter contacted Plaintiff by phone to discuss why she did not want to go back to the Huppert home. *Id.* When Plaintiff informed Linden began to explain why she did not want to return to the Huppert home, Linden interrupted her and said, "I assume this is about the inappropriate touching." *Id.* at Pg ID 48-49. Linden explained "that there were a few complaints" about Huppert's conduct from other former PPC employees from over "one-half years" ago. *Id.* at Pg ID 49.

Following that conversation, Plaintiff met with Linden to discuss in detail the harassment she was enduring at the Huppert home. *Id.* After Plaintiff was finished, Linden assured her that she would not be losing her job; he would investigate the situation and would report his findings to her; and that he would transfer her to another PPC facility (Pine Ridge) where she would retain her full-time hours. *Id.* Linden also told Plaintiff that she was being considered for a promotion to a managerial position with PPC. *Id.* at Pg ID 50.

3

Several days after their meeting however, Linden informed the Plaintiff that she was not being considered as a candidate for the managerial position. *Id.* Additionally Plaintiff's full-time schedule was reduced to nine hours per week. *Id.* at Pg ID 54. Plaintiff was also removed from a client's home without an explanation. *Id.* at Pg ID 53. Plaintiff tried to reach Linden regarding these issues, but Linden never returned her calls. *Id.* at Pg ID 54-55.

Plaintiff ultimately experienced an anxiety attack as a result of these circumstances. *Id.* at Pg ID 53. She was hospitalized and treated for emotional distress. *Id.* Plaintiff's hospitalization resulted in her involuntary and/or constructive discharge from her employment with PPC. *Id.* at Pg ID 55. Huppert remained a client of PPC and sexually assaulted his next caregiver who was assigned by Linden. *Id.* at Pg ID 56-57.

Plaintiff filed a discrimination charge with the EEOC, which provided her with a right to sue letter. *Id.* at Pg ID 40. Plaintiff then timely filed the instant civil rights lawsuit alleging: Count I (sexual harassment and/or discrimination or retaliation in violation of Title VII); Count II (unlawful retaliation for engaging in protected activity under Title VII); Count III (violation of Title VII – hostile work environment); and Count IV (violation of the Michigan Elliot-Larson Civil Rights Act). Defendant Linden moves for the dismissal of Count I, II, and III of Plaintiff's complaint. Defendant Linden argues that there is no individual liability

under Title VII, therefore Counts I-III fail to state a claim upon which relief may be granted. Def.'s Mot. for Dismissal Pg ID 125.

## III. LAW & ANALYSIS

### A. Standard of Review

A Motion for Partial Dismissal is governed by Federal Rule Civil Procedure 12(b)(6), which empowers the court to dismiss a cause of action if there is a, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A cause of action survives Fed. R. Civ. P. 12(b)(6) when the, "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In determining whether a cause of action survives a Motion for Dismissal, "a court must accept as true all of the allegations contained in a complaint . . . ." *Ashcroft*, 556 U.S. at 678.

### B. Title VII Text

Title VII of the Civil Rights Act of 1964 states that, "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (1964). An "employer" is defined as, "a person engaged in an industry affecting

5

commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . ." 42 U.S.C. § 2000e(b) (1964). The term "agent" is not defined in the statute, but courts have interpreted "agent" to mean, "an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994) (quoting *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993)).

### C. Individual Liability under Title VII

In *Wathen v. Gen. Elec. Co.*, the Sixth Circuit considered the issue of whether an individual can personally be liable under Title VII. 115 F.3d 400 (6th Cir. 1997). The *Wathen* court upheld the district court's decision of summary judgment in favor of the defendants, who were the plaintiff's supervisors. *Id.* at 406. In doing so, the Sixth Circuit joined the majority of its sister circuits in holding, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Id.* at 405.

Here, Plaintiff brought a cause of action under Title VII against Linden in his individual capacity. Plaintiff, just like the plaintiff in *Wathen*, read the definition of "employer" in a literal manner to argue that an individual could be liable under Title VII for being an "agent. Plaintiff's support for this narrow view

was *Mengelkamp v. Lake Metro Housing Authority*, 549 Fed.Appx. 323 (6th Cir. 2013). In *Mengelkamp*, the court found the plaintiff's supervisor liable under the definition of "employer" in §2000e(b). Id. at 335 ([defendant] is appropriately considered an employer for purposes of Title VII liability. An individual qualifies as an employer under Title VII if he (1) serves in a supervisory position, (2) has significant control over plaintiff's hiring, firing, or conditions of employment," and (3) is the ultimate authority over [the plaintiffs] employment and working conditions.")(internal citation and quotation marks omitted).

The *Wathen* court did acknowledge this interpretation, "[w]e concede that a narrow, literal reading of the agent clause in §2000e(b) does imply that an employer's agent is a statutory employer for purposes of liability." *Id.* at 405 (citations and internal quotations omitted). The court rejected this interpretation, "[h]owever, it is well-settled that in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id.* (internal citations and quotations marks omitted).

The *Wathen* court then decided on the provisions of §2000e(b) by looking at the legislative history and the case law. *Id.* at 405-06. Looking at case law, the majority of courts addressing this issue concluded that, "[t]he obvious purpose of this agent provision was to incorporate superior liability in to the statute." *Id.*

7

(quoting *Miller v. Maxwell's Int'l, Inc.*, 911 F.2d at 587 (internal quotation marks omitted)). The court then looked at the legislative history of Title VII. *Id.* at 406. The court found Title VII's remedial provisions also leads to the conclusion that an individual cannot be liable under Title VII. The court found that in the early stages of the Act that, "a successful Title VII plaintiff was limited to reinstatement and back pay—remedies only from an employer." *Id.* (citing *Tomka v. The Seller Corporation*, 66 F.3d 1295, 1314 (2nd Cir. 1995), and that, "[t]his limitation on the available remedies suggests that Congress did not intend to allow recoveries against individual employees . . . ." *Id.* In 1991 Congress enacted The Civil Rights Act, 42 U.S.C. § 1981a, which added compensatory and punitive damages for discrimination under Title VII. *Id.* However, the court notes that, "[t]he statute contains no provisions for damages to be paid by individuals, further evidencing a lack of congressional intent to hold individuals. *Id. See Miller*, 991 F.2d at 588 n. 2. ("[If] Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in this litany of limitations . . . .").

The court concluded that, "the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII," and that an individual is not liable under Title VII. *Id.* at 405-06. *Mengelkamp* is an unpublished opinion and

therefore not binding, whereas *Wathen* is a published opinion and thus our Court is bound to its decision.

Plaintiff cites to *Williams v. General Motors Co.*, to establish that Linden has an affirmative duty to prevent sexual harassment within the workplace. 187 F.3d 553 (6th Cir. 1999). *Williams* is distinguishable from our case for two reasons. The *Williams* court said that in the wake of the Supreme Court decisions of *Faragher v. City of Boca Raton*, 524 U.S. 2275 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), "it is no longer enough for an employer to take corrective action; employers now have an affirmative duty to prevent sexual harassment by supervisors." *Williams* 187 F.3d at 561. In *Williams*, the plaintiff was being harassed be her supervisors, whereas here, Plaintiff was harassed by Huppert, a client not a supervisor. Employers have greater control over their supervisors. There is usually an application process for supervisors where the employer can look at the characteristics of a possible supervisor and decide to hire them or not based on his own judgment. While the employer picks his supervisors, usually the client that decides which employer he wants. Because of market competition and the need to create revenue, most employers do not have the luxury to pick its clients. Because the employer has greater control over its supervisors, it makes sense that they have more liability over its supervisors' actions as compared to a client. *Williams* is also

distinguishable because the company was the only defendant. The fact that the court consistently referenced General Motors as the employer regarding Title VII instead of its CEO or owner, only strengthens Linden's argument that he cannot be liable under Title VII.

Plaintiff also brings the same claims against Linden in his official capacity. With regards to official capacity under Title VII, the Sixth Circuit held, "

> While the law is clear that a supervisor cannot be held liable in his or her individual capacity for violations of Title VII, there is support for the proposition that a supervisor may be held liable in his or her official capacity upon a showing that he or she could be considered the "alter ego" of the employer.

*Little v. BP Exploration &Oil Co.*, 265 F. 3d 357,362. n.2 (6th Cir. 2001). However, "when a corporate employer is already being sued under Title VII an official capacity adds nothing to the litigation." *Maudlin v. Inside Out Inc.,* 2014 WL 1342883, at *3 (S.D. Ohio 2014)(citing *Campbell v. Korleski*, 2011 WL 27486411 at *3 (S.D. Ohio 2009)). To the courts, it does not make sense to include both entities as it is just redundant. *Maudlin*, 2014 WL at *4 ("allowing a suit to continue against [individual] [d]efendant is redundant when [his company] is already a named [d]fendant."), *See Busby v. City of Orlando*, 931 F.2d 764, 772 ("individual capacity suits under Title VII are [] inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions

would constitute a violation of the Act."); *see also Campbell*, 2011 WL at *3 ("such unnecessary private employer official capacity claims are wholly duplicative of the Title VII claims against [his company] and add nothing to this litigation . . . dismissal of the redundant claims is permissible."); *see also Miller v. Rudd*, 2001 WL 242588, at *11 ("although [p]laintiff may assert Title VII claims against [individuals] in their official capacities as agents of OSAC, the claims are actually claims against OSAC, [p]laintiff's employer, and any recovery will run against OSAC only."). Here, PPC is Plaintiff's employer and so bringing a claim against Linden, the owner of PPC, and PPC is redundant.

Because Linden, as an individual, is not liable under Title VII in this, Plaintiff has failed to assert a plausible cause of action against Linden. Therefore, the Court should grant Linden's Motion for Partial Dismissal under Fed. Civ. P. 12(b)(6).

## IV. CONCLUSION

For the reasons discussed herein, Defendant Linden's Motion for Partial Dismissal [#10] is GRANTED. Counts I, II and III are hereby dismissed as to Defendant Sanford Linden only.

SO ORDERED.

Dated: July 10, 2017  /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 10, 2017, by electronic and/or ordinary mail.
<u>/s/ Tanya Bankston</u>
Deputy Clerk